UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**REGINA RAGLAND,**

       **Plaintiff,**

       Case No.     08-11783

v.

       **HONORABLE DENISE PAGE HOOD**

**VON MAUR, INC.,**

       **Defendant.**

                       /

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SCHEDULING STATUS CONFERENCE

### I. INTRODUCTION

This matter is before the Court on Defendant's Amended Motion for Summary Judgment filed on April 29, 2009.[1] Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment on May 18, 2009. Defendant filed a Reply Brief in Support of Defendant's Motion for Summary Judgment on May 22, 2009. A hearing was held on June 3, 2009.

### II. STATEMENT OF FACTS

Plaintiff, Regina Ragland, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* Plaintiff claims that Defendant, Von Maur, Inc., unlawfully terminated her employment on the basis

---

[1] On April 27, 2009, Defendant filed a Motion for Summary Judgment. The Court deems this motion moot.

1

of gender, race, and age in October 2007.

Defendant is a family-owned retail business that operates several department stores throughout the Midwest. Defendant has two store locations in Michigan, one at Briarwood Mall in Ann Arbor, Michigan and one at Laurel Park Place Mall in Livonia, Michigan. Defendant hired Plaintiff, a forty-three year old, African American female to work in its Briarwood store in August 2003. Plaintiff was hired as a loss prevention associate. Plaintiff was hired by the then-store manager, Lori Abel, who was later replaced by Nicole Paine as the store's manager. Ms. Paine reported to Regional Manager, Amy Rotert. Despite Plaintiff's exemplary performance while employed at Defendant's store, Plaintiff alleges that Defendant disciplined and terminated her, impermissibly basing its decision upon Plaintiff's race, gender and age. Conversely, Defendant asserts that Plaintiff was terminated on October 3, 2007 because she returned merchandise that resulted in a loss to the company because it could not be resold. The termination form states that:

> On 10-3-07 management spoke with Regina regarding 3 return transactions. Regina admitted to returning old merchandise. The merchandise was 2 or more years old and was not sellable which caused a loss for the company. We have lost confidence in Regina's ability to maintain her position with Von Maur, therefore we are terminating her employment.

*See* Def.'s Mot. for Summ. J., Ex. 2.

During her employment with Defendant, Plaintiff consistently received "fully meets expectations" and "far exceeds expectations" on her performance reviews. *See* Plf.'s Resp. in Opp. to Def.'s Mot. for Summ. J., Exs. 4, 5, 6, 7, 8, 9, 10. In August 2004, Plaintiff was awarded with a Top Producer Certificate in recognition of her achievement in loss prevention. *Id.*, Ex. 11. In fact, five weeks prior to Plaintiff's termination, her evaluation stated that she "works within Von Maur LP guidelines." *Id.*, Ex. 10.

In April 2006, Plaintiff complained to her manager, Ms. Paine, that the housekeeping manager, Harold,[2] subjected her to a racially hostile statement. Plaintiff asserts that she was returning from lunch and when she was riding the escalator, Harold, with customers and another employee present, asked Plaintiff if she was just coming back from doing crack. *See* Plf's. Resp. in Opp., Ex. 2 at 70-71.

A few months prior to Plaintiff's October 2007 termination, she was subjected to comments about her age. Plaintiff asserts that Ms. Paine told her that Amy Rotert said that Plaintiff "did not take directions well from a younger person who's in authority." *Id.*, Ex. 2, Dep. Tr. of Regina Ragland at 47. Plaintiff complained to her manager, Diana Pettit, about the comments. *Id.* at 56.

In mid-September 2007, Plaintiff returned previously purchased, unused items, with the tags still attached. Plaintiff asserts that the returns were conducted in the usual manner, that is Plaintiff would leave the merchandise and her credit card with Customer Service Representative Kyra Mixon to process. Plaintiff asserts that she was never provided with a written policy dictating how employee purchases or returns should be conducted.

While Defendant admits that the company has a liberal return policy that applies to both customers and employees, it argues that both customers and employees are expected to return merchandise on a timely basis. According to Ms. Rotert, "it is an expectation of our employees that, you know, the merchandise still has the tags on it, it is within the season that they are returning it, and that we would be able to resell it to the customers." *Id.*, Ex. 8, Dep. Tr. of Amy Rotert at 20. Ms. Rotert testified that this expectation is not contained within any written policy of the company. In regard to employee returns of merchandise, the only written policy covers the processing of

---

[2] Plaintiff does not recall his last name.

employee returns. *Id.*[3]

After Plaintiff's returns were processed she was called into a meeting with Ms. Rotert and Ms. Paine. According to Defendant, Plaintiff's returns were flagged at corporate headquarters because the transactions were suspicious as the majority of items were not in inventory because they were so old.[4] After corporate's initial investigation, the issue was referred to Rotert and Paine for further investigation. Ms. Rotert testified that she was particularly concerned that a loss prevention associate had made the returns which resulted in a loss to the company, the very thing Plaintiff was responsible for preventing as part of her job duties. *See* Def.'s Mot. for Summ. J., Ex. 8, Dep. Tr. of Amy Rotert.

As part of the investigation, Ms. Rotert and Ms. Paine met with Plaintiff, who was forthcoming about the returns she had made in September 2007. According to Defendant, after the meeting, Rotert and Paine discussed the situation with Rotert's supervisor and decided to terminate Plaintiff because they had lost confidence in her ability to remain as a loss prevention associate as Plaintiff did not see a problem with her returns. Defendant further asserts that it has terminated

---

[3] Employees are required to check the items they seek to return at the store's package check area. When the employee is on a break, he or she will retrieve the items from this area and have a sales associate process the return. *Id.* at 20-21.

[4] Defendant asserts that every season it changes the merchandise in its stores. If merchandise has not been sold prior to the change in merchandise, it is then sent back to the distributor, a liquidator or otherwise deposed of. In any case, this results in a loss of revenue to the company. *See* Def.'s Mot. for Summ. J., Ex. 8, Dep. Tr. of Amy Rotert at 44. This merchandise is considered "out of stock" and if merchandise is returned that is "out of stock" it does not show up in the store's inventory system.

Defendant also asserts that each store generates a report each day which is reviewed at the corporate office. The purpose of the report is to detect fraud. If a questionable transaction is flagged, then an initial investigation is done. If the matter is not resolved, regional and local management personal are notified and charged with resolving the matter. Employees are identified on this report only by their employee number.

employees in addition to Plaintiff for abusing the company's return policy. *Id.*, Ex. 3 at 56-57.[5] A month after terminating Plaintiff, Defendant hired a twenty-one year-old Caucasian male to work in the loss prevention department.

## III.  APPLICABLE LAW & ANALYSIS

### A.  Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

### B.  ADEA and ELCRA Age Discrimination Claims (Counts V and VIII)

Defendant raises the same argument as to all of Plaintiff's discrimination claims: Plaintiff cannot establish a prima facie case, and in the alternative, even if Plaintiff can establish a prima facie case, Defendant has articulated a legitimate reason for her discharge, i.e., her returns were in

---

[5] It appears that a second floor manager was terminated for doing "something highly illegal" and was escorted from the store "in handcuffs." *Id.* Another employee was terminated for processing her own return. *Id.*

violation of company policy and expectations and caused a loss to the store.

Both the ADEA and the ELCRA prohibit employers from discharging an employee or otherwise discriminating against any employee with respect to his or her compensation, terms, conditions, or privileges of employment, because of the employee's age.[6] *See* 29 U.S.C. § 623(a)(1); MICH. COMP. LAWS § 37.2202. In order for the employer to be liable, Plaintiff's "age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000) (internal quotations omitted). Plaintiff may prove her discrimination claim by direct or circumstantial evidence. *Allen v. Highlands Hospital Corp.*, 545 F. 3d 387, 394 (6th Cir. 2008). When the claim is based mainly on circumstantial evidence, courts utilize the three-step *McDonnell Douglas* framework.[7] *Id.* (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 350 (6th Cir. 1998). The first step requires that Plaintiff prove a prima facie case of age discrimination**.** *Id.*

In order to establish a prima facie case of age discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment decision; (3) she was qualified for the job or promotion; and (4) she was replaced by someone outside the protected class. *See Blair v. Henry Filters, Inc*., 505 F. 3d 517, 528 (6th Cir. 2008). The burden is then shifted to the employer to "produce evidence that the plaintiff was rejected, or someone else was preferred,

---

[6] Michigan courts look to federal law for guidance when reviewing claims of age discrimination based on state law. *See Featherly v. Teledyne, Inc.*, 194 Mich. App. 352, 357-58; 486 N.W. 2d 361 (1992). A plaintiff seeking recovery under both the ADEA and the ELCRA bears the burden of proving a prima facie case of discrimination. *Hein v. All Am. Plywood Co.*, 232 F. 3d 482, 488 (6th Cir. 2000).

[7] The Court will analyze Plaintiff's race and gender discrimination claims using the same framework.

for a legitimate, nondiscriminatory reason." *Reeves*, 530 U.S. at 142. Once a legitimate, non-discriminatory reason is offered, "the *McDonnell Douglas* framework with its presumptions and burdens disappear[s] and the sole remaining issue is discrimination *vel non*." *Id.* at 142-43 (internal quotations and citations omitted).

At this stage, the Court concludes that Plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for the discrimination. Plaintiff can prove that the legitimate, non-discriminatory reason is mere pretext by showing that the reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *See Wexler v. White*, 317 F. 3d 564, 576 (6th Cir. 2003). "[A] jury may consider the reasonableness, or lack thereof, of an employer's business judgment, insofar as it may assist in determining the employer's state of mind." *In re Lewis*, 845 F. 2d 624, 633 (6th Cir. 1988).

However, even where this Court concludes that the employer demonstrated poor business judgment, liability under Title VII is not therefore presumed, "but may be probative of whether the employer's reasons are pretexts for discrimination." *Id.* As such, courts should determine if "the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F. 3d 799, 807 (6th Cir. 1998). Lastly, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 147.

Plaintiff establishes a prima facie case of age discrimination because (1) she was forty-nine years old during the relevant time, (2) she was terminated, (3) she was performing satisfactorily, and

(4) she was replaced by a twenty-one year old Caucasian male.

Defendant has offered a legitimate, non-discriminatory reason for Plaintiff's termination. Specifically, that Plaintiff was terminated for returning old merchandise, which according to Defendant, is a policy violation that resulted in a loss to the company. The Court concludes that Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendant's reason was mere pretext. First, Plaintiff was subjected to age-related remarks a few months prior to her termination, remarks that were made by the Regional Manager, Ms. Rotert, who made the ultimate decision to terminate Plaintiff.[8] Second, the fact that there is no written policy concerning when merchandise may be returned to the store supports a challenge to Defendant's legitimate non-discriminatory reason for Plaintiff's termination. Defendant's training materials state that the return policy is a "no questions asked" return policy. *See* Plf.'s Resp. in Opp. to Def.'s Mot. for Summ. J., Ex. 18. Defendant attempts to support its legitimate reason by demonstrating that the policy does in fact exist, despite a lack of a writing, and that customers, as well as employees have been held accountable for violating it. Defendant argues that it prohibits customers who abuse the return policy from shopping at its stores, and that Plaintiff, as a loss prevention associate, should have known that returning old merchandise would result in a loss to the company. In support, Defendant attaches "denial narratives" signed by Stephanie Higgins. *See* Def.'s Mot. for Summ. J., Ex. 9. However, it is apparent from a review of these denials, that Ms. Higgins denied the returns

---

[8] The Court is aware of the fact that the store manager denies ever making this statement to Plaintiff, and that Plaintiff is uncertain of the exact timing of the statement. However, the Court is obliged to take the facts in the light most favorable to the non-moving party and will rely on Plaintiff's testimony that she believes the statement was made less than six months prior to her termination. *See* Plf.'s Resp. in Opp. to Def.'s Mot. for Summ. J., Ex. 2, Dep. Tr. of Regina Ragland at 56.

8

because the customers who attempted to return these items had no receipts for the merchandise, which was out of stock, or she denied the returns under suspicion of theft. Further, Ms. Higgins also testified that she was trained, and in turn trained others, to allow for the return of any merchandise, including "old" merchandise. *Id.* at 38-40; 48-59; *see also*, Ex. 21. Defendant also argues that it has terminated employees in addition to Plaintiff for abusing the company's return policy. However, the two employees that Ms. Higgins, Defendant's former Human Resources Manager for the Briarwood store, discussed during her deposition committed policy violations that are distinguishable from the alleged policy that Plaintiff violated. Ms. Higgins testified that one of the employees, a manager did something illegal and was led out of the store in handcuffs; and the other employee was terminated for processing her own return, a violation which is covered by a written policy. *See* Plf.'s Resp. in Opp., Ex. 22 at 56-57.

Additionally, Defendant has failed to establish that it actually suffered a loss from Plaintiff's return of the old merchandise. In fact, Kyra Nixon, former customer service representative at Defendant's Briarwood store, purchased some of Plaintiff's returned merchandise and claims to have personal knowledge that the manager of the children's department also purchased some of Plaintiff's returned merchandise. *Id.*, Ex. 14.

The Court notes that the genuineness of Defendant's decision to terminate Plaintiff is questionable based on the fact that it did not make a reasonably informed and considered decision. In *Sybrandt v. Home Depot, U.S.A., Inc*., No. 08-5598, 2009 U.S. App. LEXIS 6401 (6th Cir. March 26, 2009) the Sixth Circuit concluded that the decision to terminate the plaintiff's employment was the result of an honest belief that he had violated company policy. *Id.* at *13. *Sybrant* is distinguishable from the facts of the present case. In *Sybrant,* the defendant had a written policy and

9

the plaintiff was aware of the policy prior to his termination. *Id.* at *3. Additionally, unlike the present matter, the defendant in *Sybrant* engaged in a thorough investigation:

> A human resources representative [] and a loss-prevention manager [] conducted the investigation. They interviewed Sybrandt and other employees regarding the events in question. The results of the investigation included a written description of security-camera footage. . . .Furthermore, an Employment Practices Manager for Home Depot []not only reviewed the initial results of the [] investigation, but also requested further factfinding before recommending Sybrandt's discharge.

*Id.* at *13. Here, Plaintiff was called into a meeting with Ms. Paine and Ms. Rotert. Ms. Rotert apparently discussed the matter with her supervisor subsequent to the meeting and determined that termination was warranted. However, Ms. Rotert did not speak with Ms. Mixon, the associate who handled the return, nor did she ascertain whether the company actually suffered a loss. Ms. Rotert did not review Plaintiff's former evaluations, which established that she was meeting the company's expectations. Based on this evidence, there exists a question of fact as to whether Defendant's legitimate business reason was sufficient to warrant the challenged conduct. Accordingly, there remains a question of fact as to whether Defendant impermissibly terminated Plaintiff on the basis of her age, in violation of the ADEA and ELCRA. Defendant's Motion for Summary Judgment is denied as to these claims.

        **C.**        **Title VII and ELCRA- Race Discrimination (Counts I, II, and VI)**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as well as the ELCRA make it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e -2(a). "A plaintiff may establish a prima facie case of discrimination either by presenting direct

evidence of intentional discrimination by the defendant, or by showing the existence of circumstantial evidence" utilizing the *McDonnelll Douglas* framework. *Talley v. Bravo Pitino Restauarant*, 61 F. 3d 1241, 1246 (6th Cir. 1995).

Under *McDonnell Douglas*, Plaintiff must first establish that (1) she is a member of a protected class, (2) that she was the subject of an adverse employment decision, (3) that she was qualified for the position and (4) that she was replaced by a person outside of the protected class. *Id.* Similar to Plaintiff's age discrimination claim brought pursuant to the ADEA and ELCRA, Plaintiff has set forth a prima facie case. She is African-American, was terminated from employment for which she was qualified and replaced by a Caucasian individual.

While the Court has already concluded that genuine questions of material fact remain as to whether or not Defendant's proffered reason for terminating Plaintiff's employment is actually pretext, the Court finds that the statement Plaintiff relies on in support of her intentional race discrimination claim is too remote in time, too vague and isolated to submit this claim to the jury. Unlike the age-related statement, made less than six months prior to Plaintiff's termination, and made by Ms. Rotert, the final decision-maker, the statement made by the housekeeping manager, Harold, was made well over a year prior to Plaintiff's termination. In evaluating alleged discriminatory remarks, this Court must consider: (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the adverse action. *See Peters v. Lincoln Elec. Co.*, 285 F. 3d 456 (6th Cir. 2002). As such, Defendant's Motion for Summary Judgment is granted as to Count I and VI of Plaintiff's Complaint.

Plaintiff has also alleged a disparate treatment race discrimination claim, which requires proof of the same elements to set out a prima facie case except that "the fourth element may also be satisfied by showing that similarly situated non-protected employees are treated more favorably." In support of this argument, Plaintiff supplies evidence that another loss prevention associate, Julie Graham, who is Caucasian, made similar returns but was neither disciplined nor terminated. *See* Plf.'s Br. in Opp. to Def.'s Mot. for Summ. J., Ex. 23. Ms. Graham avers that while employed as a loss prevention associate, she returned a man's coat which she purchased months before. She received $ 97.00 in refund but the coat was put back on the sales floor for a sale price of $24.00. *Id.* Ms. Graham was never disciplined or terminated. Plaintiff may also show pretext by establishing "that other employees who engaged in similar misconduct received less severe sanctions." *Wilson v. Stroh*, 952 F. 2d 942, 945 (6th Cir. 1992). As such, Plaintiff's disparate treatment discrimination claim (Count II) is not subject to summary judgment in favor of Defendant.

### D. Title VII and ELCRA-Gender Discrimination (Counts III and VII)

Plaintiff's gender discrimination claims under Title VII and the ELCRA are to be evaluated using the same *McDonnell Douglas* framework. *See Succarde v. Fed. Express Corp.*, 106 Fed. Appx. 335, 339 (6th Cir. 2004). Again the Court concludes that Plaintiff has again stated a prima facie case of gender discrimination because she is female, was terminated from her employment, she was performing satisfactorily, and she was replaced by a male. Because this Court finds genuine issues of material fact as to Defendant's proffered reason for terminating Plaintiff's employment, Plaintiffs gender discrimination claims survive summary judgment. Accordingly, Counts III and VII remain in this action.

### E. Title VII and ELCRA-Retaliation (Counts IV and IX)

Title VII prohibits retaliation against any person "because [the person] has made a charge, filed a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this act." *See* 42 U.S.C. § 2000e-3(a); *see also, Thompason v. North American Stainless, LP.*, 567 F. 3d 804, 806-07 (6th Cir. 2008). To establish a claim of retaliation, a plaintiff must establish that: (1) he engaged in protected activity; (2) defendant knew that he engaged in this protected activity; (3) the defendant subsequently took an employment action adverse to the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists. *See Balmer v. HCA, Inc.,* 423 F. 3d 606, 613-14 (6th Cir. 2005).

Plaintiff asserts that she has presented a prima facie case of retaliation because it is undisputed that she complained to her store manager about a racially hostile work environment created by the housekeeping manager. Plaintiff also relies on the fact that Plaintiff's store manager testified that she believed Plaintiff had an 'attitude', and she was one of three individuals who participated in the decision to terminate Plaintiff's employment. Defendant counters that Plaintiff cannot establish a prima facie case because she never complained of discrimination specifically and there is no evidence of a causal link between the activity and Plaintiff's termination. The Court agrees with Defendant's latter argument. Plaintiff must establish a causal connection between her complaint and her termination. *See EEOC v. Avery Dennison Corp.*, 104 F. 3d 858, 861 (6th Cir. 1997). Plaintiff's returns in September 2007 were first anonymously identified at corporate as the report only reflected her employee number, and the loss analyst at the corporate office did not know it was Plaintiff who made the returns. The fact that the store manger disciplined Harold and he apologized to Plaintiff also suggests that there is no connection between her complaint and her

13

termination. Lastly, Plaintiff made the complaint roughly a year and a half prior to her termination and it is too remote in time from her termination. Plaintiff's retaliation claims (Counts IV and IX) are therefore dismissed.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Amended Motion for Summary Judgment [**Docket No. 22, filed on April 29, 2009**] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [**Docket No. 20, filed on April 27, 2009**] is MOOT.

IT IS FURTHER ORDERED that Counts I, IV, VI, and IX are dismissed.

IT IS FURTHER ORDERED that Counts II, III, V, VII, and VIII remain in this action.

IT IS FURTHER ORDERED that a Status Conference is scheduled for May 24, 2010 at 3:30 p.m.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 24, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 24, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager